**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

_____X
In re:                                :
                                      :
Peter J. Gould,                       :    Chapter 11
                                      :    Case No. 03-51180
        Debtor.                       :
_____X

*Appearances:*

| | | |
|---|---|---|
| Peter L. Ressler, Esq. | : | Attorney for Debtor |
| Groob, Ressler & Mulqueen PC | : | |
| 123 York Street, Suite B | : | |
| New Haven, CT  06511 | : | |
| | | |
| Holley L. Claiborn, Esq. (On brief) | : | Attorneys for the |
| Steven E. Mackey, Esq. | : | U.S. Trustee, Region 2 |
| Giaimo Federal Building | : | |
| 150 Court Street, Room 302 | : | |
| New Haven, CT  06510 | : | |

**MEMORANDUM AND ORDER ON DEBTOR'S**
**MOTION FOR FINAL DECREE**

      Peter J. Gould has filed a motion for a final decree to which the United States Trustee has objected.  The resulting controversy is motivated by Gould's intention to terminate his obligation to pay post-confirmation quarterly fees and the Unites States Trustee's determination to collect them.  For the reasons that follow, the motion is granted.

**BACKGROUND**

      On August 22, 2003, Gould commenced this chapter 11 case.  His second amended plan of reorganization was confirmed on November 29, 2004 (doc. #195). Thereafter, the management of the case was consumed by litigation which is caused the case to remain open.

On October 1, 2009, the United States Trustee ("UST") filed a motion to compel Gould to pay post-confirmation chapter 11 quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) and to file Monthly Operating Reports ("MORs") (doc. #360). The motion was granted on November 5, 2009 (doc. #366) ("Compel Order").[1] On December 3, 2009, the Gould filed multiple MORs (doc. ## 368-374), and on December 21, 2009, he filed amended MORs (doc. #376). On December 4, 2009, the UST notified Gould that he owed post-confirmation quarterly fees in the amount of $20,475 for quarters from July 2006 through the third quarter of 2009. On December 18, 2009, Gould tendered a check for $6,350.00.

On March 31, 2010, Gould filed the instant motion, captioned as an "Application" (hereafter, "Final Decree Motion"), which stated, *inter alia*, that "[a]ll payments have been made in accordance with the Plan," and "[a]ll other distributions due under the confirmed Plan will be made in accordance with its terms." Final Decree Motion at ¶¶ 2-3. On April 13, 2010, the UST filed an objection, claiming that Gould failed to pay all required post-confirmation quarterly fees and failed to file all required MORs and a final report in accordance with Local Bankruptcy Rule 3022-1(doc. #386).

## DISCUSSION

### I

The issue addressed here is whether, as the UST argues, the "[p]ayment of outstanding [post-confirmation ] Chapter 11 Quarterly Fees is a prerequisite to the entry of a final decree" (UST's Objection at 3.) so that a failure to satisfy that requirement would prevent the entry of a final decree closing the case. In support of her objection, the UST cites to several cases which, in addition to being non-binding precedent, do not

---

[1] Under the terms of the Compel Order, if the Debtor failed to comply with the deadlines for filing MORs and/or paying quarterly fees, there was a mechanism for the court to hold a hearing on the non-compliance or for the court to convert the case. The UST has not sought to employ the remedies available to her under the Compel Order.

specifically support that proposition.[2]

For example, in *In re Boulders on the River, Inc.*, 218 B.R. 528 (D. Or. 1997), which primarily dealt with the 1996 amendments to 28 U.S.C. § 1930, in *dicta*, the district court stated that "*[a]lthough it may not have been required to do so*, the bankruptcy court did not err in conditioning entry of a final decree on final resolution of th[e] contested[ quarterly] fee matter." *Id.* at 544 (emphasis added). It is noteworthy that the district court prefaced this conclusion by stating, " *This is at some level a discretionary issue for each bankruptcy court.*" *Id.* (emphasis added). That recognition of a court's discretion is consistent with the Editors' Comment, *see infra* p. 6, that "the Advisory Committee interprets 'fully administered' very loosely and *encourages courts to use substantially more discretion in deciding whether to close a Chapter 11 case*

---

[2] During the hearing on this motion, Attorney Mackey for the UST's Office referenced the Second Circuit's *Schwartz v. Aquatic Development Group, Inc. (In re Aquatic Development Group, Inc.)*, 352 F.3d 671 (2d Cir. 2003), as support for the UST's position that UST post-confirmation quarterly fees must be paid before a final decree may enter. His reliance on *Aquatic Development* is unavailing. While the underlying issue in *Aquatic Development* was the payment of such quarterly fees, the narrow focus of the Circuit Court's decision was the proper application of *nunc pro tunc* relief, not whether payment of those fees was a prerequisite to the closing of a bankruptcy case. *See id.* at 677. The Second Circuit specifically stated at the beginning of its "Discussion":

> [W]e conclude that the Bankruptcy Court abused its discretion in concluding that [the debtor] was entitled to nunc pro tunc relief. Consequently, we need not–and do not–decide whether Congress' 1996 amendment to [28 U.S.C.] § 1930 strips bankruptcy courts of their equitable authority to grant nunc pro tunc relief where doing so would allow debtors to avoid paying quarterly trustee fees that the debtors would otherwise be required to pay.

*Id.* Gould does not seek *nunc pro tunc* relief.

In her written Objection to the Final Decree Motion, Attorney Claiborn conspicuously did not rely upon *Aquatic Development* for that position. *See* Objection at 3. Rather, she cited to *In re Boulders on the River, Inc.*, 218 B.R. 528 (D. Or. 1997), *In re Gates Community Chapel of Rochester, Inc.*, 212 B.R. 220 (Bankr. W.D.N.Y. 1997), and *In re Huff*, 270 B.R. 649 (Bankr. W.D. Va. 2001).

*then Code § 350 and the Rule literally read*." Fed. R. Bankr. P. 3022 ed. cmt. (emphasis added).

In *In re Gates Community Chapel of Rochester, Inc.*, 212 B.R. 220 (Bankr. W.D.N.Y. 1997), the bankruptcy court focused on whether the UST's post-confirmation quarterly fees were a form of taxation to which the debtor-church should be exempt under the Establishment Clause. *See id.* at 226-28. There was no discussion or analysis regarding whether payment of those fees was a prerequisite to issuing a final decree. Rather, after finding the imposition of the post-confirmation quarterly fees did not violate the Establishment Clause, the court concluded, "This case has been fully administered for purposes of Section 350 and Rule 3022 and an order closing the case shall be entered once the Debtor has paid all outstanding quarterly U.S. Trustee fees due post-confirmation." *Id.* at 229. Given the focus of the court's analysis, *Gates Community Chapel* does not persuade this court to adopt the UST's position. Moreover, the issue here is not whether Gould is required to pay post-confirmation quarterly fee: as noted, he has paid some of those fees. Rather, the issue is whether the payment of post-confirmation fees is a condition precedent to a determination that a case has been fully administered.

The court does not agree with the UST's parenthetical characterization of *In re Huff*, 270 B.R. 649 (Bankr. W.D. Va. 2001).[3] (*See* UST's Objection at 3.) Although the Huff court sustained the UST objection to the debtor's application for a final decree, the point of that objection was how the quarterly fee was to be assessed. To that end, the *Huff* court defined the contested issue as "whether a transaction to refinance an existing debt, which is retired with proceeds from the new loan, is a disbursement within the meaning of 28 U.S.C. § 1930(a)(6)." 270 B.R. at 650. The *Huff* court then focused the remainder of its decision on examining what a "disbursement" is within the context of § 1930(a)(6). *See id.* at 650-53. Accordingly, this court is unpersuaded that the

---

[3] In her citation to *Huff*, 270 B.R. 649, the UST parenthetically describes the case as follows: "(UST objection to final decree on grounds of unpaid Chapter 11 Quarterly Fees sustained and debtor ordered to pay outstanding Chapter 11 Quarterly Fees)".

holding in Huff is that payment of quarterly fees is a prerequisite to the issuance of a final decree.

The analysis of this issue begins with the text of the relevant provisions of the Bankruptcy Code and Rules.

> After an estate is *fully administered* . . . , the court shall close the case.

11 U.S.C. §350(a) (emphasis added).

> After an estate is *fully administered* in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case.

Fed. R. Bankr. P 3022 (emphasis added). The phrase "fully administered" is not defined in the Code or Rules. The 1991 Advisory Committee Notes accompanying Rule 3022, however, provide:

> Entry of a final decree closing a chapter 11 case should not be delayed solely because the payments required *by the plan* have not been completed. Factors that the court should consider in determining whether the estate has been fully administered include (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.
> The court should not keep the case open only because of the possibility that the court's jurisdiction may be invoked in the future. *A final decree closing the case after the estate is fully administered does not deprive the court of jurisdiction to enforce or interpret its own orders* and does not prevent the court from reopening the case for cause pursuant to § 350(b) if the Code. . . .

Fed. R. Bankr. P. 3022 advisory committee notes (emphasis added).

The Editors' Comment provides a further explanation of Rule 3022:

> *This Rule was amended in 1991 to set forth a flexible Rule to permit the court to determine that an estate is fully administered and should be closed even though payments or other activities involving the debtor and its creditors might continue*. The rule requires that the estate be fully administered, and the court may close the case on its own motion or on the motion of a party in interest. For example, a party in interest may wish to close a case to remove the threat of an avoiding action. *As is evident by the Committee note, the Advisory Committee interprets "fully administered" very loosely and encourages courts to use substantially more discretion in deciding whether to close a Chapter 11 case then Code § 350 and the Rule literally read*.

Fed. R. Bankr. P. 3022 ed. cmt. (emphasis added).

Some guidance is also provided by case law. For example, in *In re Kliegl Brothers Universal Electrical Stage Lighting Company, Inc.*, 238 B.R. 531 (Bankr. E.D.N.Y. 1999), the court stated:

> at a minimum, the concept [of "fully administered"] must mean that administrative claims have been provided for at least to the extent that assets exist out of which administrative claims can be partly or wholly paid. While we have not been able to find a case specifically holding that "fully administered" requires that administrative creditors be provided for, we note that § 507(a)[(2)] administrative expenses are required by § 1129(a)(9) to be provided for in full in the plan as a prerequisite to confirmation except to the extent that the holder of such claim has otherwise agreed.

*Id.* at 542-43. The *Klieg* court also observed that "the entry of a final decree is essentially an administrative task . . .". *Id.* at 541.

Our sister bankruptcy court in Vermont has recently provided additional guidance when it observed that a confirmation order " . . . signal[s] the legal conclusion of [a] case," and "is generally regarded as the final court determination in a chapter 11 case," while the final decree "simply delineates on the docket that the case is closed; it

represents the administrative conclusion of a case for record keeping purposes." *In re Fibermark, Inc.*, 369 B.R. 761, 765, 767 (Bankr. D. Vt. 2007) (citations omitted); *see also In re Beechknoll Nursing Homes, Inc.*, 202 B.R. 260, 261 (Bankr. S.D. Ohio 1996) (cited in *Fibermark*).

In *In re Indian Creek Limited Partnership*, 205 B.R. 609 (Bankr. D. Az. 1997), cited by the UST, the court held that "the only preconditions to the entry of a final decree are those relating to the plan and/or the order of confirmation." *Id.* at 611-12. Noting that the UST was not objecting to the entry of the final decree, but, rather, was requesting the court order the debtor to pay post-confirmation quarterly fee, *see id.* at 610 n.2, the *Indian Creek* court denied that request, *see id.* at 612. It concluded that if the UST wished to pursue payment of post-confirmation quarterly fees owing, "it must assert and liquidate such a claim just as any other post-confirmation creditor would in an appropriate non-bankruptcy forum." *Id.* at 612. Thus, the court directed the entry of the final decree and the closing of the case without requiring the payment of the post-confirmation quarterly fees. *See id.*

In a similar vein, in *In re Jay Bee Enterprises, Inc., a/k/a Bass Master Boats*, 207 B.R. 536 (Bankr. E.D. Ky. 1997), also cited by the UST, the bankruptcy court stated:

> Rule 3022 allows the court flexibility. It does not require that a chapter 11 case be kept open until all awarded fees and allowed claims have been paid in accordance with the confirmed plan or until the statutory fees here involved [*i.e.*, the UST's quarterly fees] have been paid.
> . . . . *There is no provision of law that prevents closing a chapter 11 case before payment of the [UST's quarterly fees]*.

*Id.* at 539 (emphasis added).

While there is no debate that the January and September 1996 amendments to 28 U.S.C. § 1930(a)(6), which extended assessment of quarterly fees to post-confirmation chapter 11 debtors,[4] were enacted by Congress as a means of increasing revenues raised by these fees, *see Aquatic Development*, 352 F.3d at 674 n.2, Congress did not amend the Bankruptcy Code, nor were the Rules amended, to require bankruptcy courts to facilitate their collection.  Absent such a mandate, this court declines to apply, *per se*, such a requirement as a matter of law.  The court further declines to exercise its discretion in requiring such a condition precedent.

It is concluded that neither the text of Code § 350(a) and Rule 3022, nor the comments and cases that construe "fully administered", support the UST's argument that the payment of post-confirmation quarterly fees is imbedded in that concept.  To the contrary, a case is fully administered when a plan is confirmed, *see* § 1141(a), and its terms have been substantially consummated.  *See Kliegl Bros.*, 238 B.R. at 542-43, *Fibermark*, 369 B.R. at 765, 767.  As of that time, a motion for a final decree is appropriate, *see* Rule 3022; *see also Indian Creek Ltd. P'ship*, 205 B.R. 609, *Jay Bee Enter.,* 207 B.R. 536, and if granted, the case "shall" be closed.  *See* § 350(a).

II

As to the UST's objection on the basis of reporting issues, *see supra* p. 2, for substantially the same reasons, the court declines to impose a requirement that all

---

[4] The Second Circuit noted:

> [a]lthough the statute does not specifically state that the closing of a bankruptcy case cuts off the accrual of the [UST]'s fees, courts interpreting the statute have uniformly held that "closure of a case after entry of a final decree is also an event that terminates quarterly fees because the existence of a case is a statutory precondition to the assessment of such fees.

*Aquatic Development*, 352 F.3d at 675 n.4 (quoting *In re Boulders on the River, Inc.*, 218 B.R. 528, 537 (D. Or. 1997)).

MORs be filed as a condition precedent to the entry of the Final Decree.[5] In accordance with the discretion afforded it, the court waives compliance with Local Bankruptcy Rule 3022-1(a), which states:

> (a) *Unless the court orders otherwise*, within thirty (30) days following substantial consummation of a Chapter 11 plan, the debtor-in-possession, trustee, distributor, or plan proponent shall file with the clerk and the United States Trustee a closing report[6] which shall: (1) contain a breakdown of the disbursements, as applicable from the inception of the case, for fees of the debtor's attorney, other professional fees and expenses, the trustee's fees, and fees for the trustee's attorney; (2) state the percentage of dividend paid and to be paid, or whether the future dividend percentage is not yet determinable; and (3) state the steps taken to consummate the plan and whether the initial plan distribution is complete.

(Emphasis added.)

     Despite the fact that the court's order confirming Gould's plan concludes by ordering Gould "to file a Final Report *with* an Application for Final Decree . . .". (Confirmation Order (doc. #195) at 2, Nov. 29, 2004 (emphasis added)), the court notes that the Administrative Office ("AO") no longer requires the reporting of the statistical information collected in that report. *See* Memorandum from Steven R. Schlesinger, Chief, Statistics Div., Administrative Office of the United States Courts to Clerks, United States Bankruptcy Courts (May 29, 2008) (on file with Chief Deputy Clerk). Thus, under the AO's 2008 directive, cases in this court are routinely closed without filing a closing report. Therefore, the court will not require Gould to file a closing report as a condition of entry a final decree.

---

[5] Although not articulated in her Objection, the requirement for filing MORs arises primarily out of the UST's Guidelines and Operating Requirements, which were implemented by the UST pursuant to 28 U.S.C. § 586(a)(3), the statutory authority outlining the UST's duties.

[6] The "closing report" is also called a "final report" or a "SARD Report".

### CONCLUSION

Finding that the confirmation order is final, all payments have been made in accordance with Gould's second amended plan, all other distributions due under the plan have been made, and there are no outstanding motions, contested matters or adversary proceedings, it is determined that the estate has been fully administered.

Accordingly, IT IS ORDERED that Gould's motion for a final decree is granted, a final decree shall enter, and this case shall be closed.

Dated this 30th day of September 2010 in Bridgeport, Connecticut.

BY THE COURT

*[signature]*

Alan H. S. Shiff
United States Bankruptcy Judge